SAMUEL T. BULL, Appellant, *v.* CHARLES F.
McCUSKEY, Jr., Respondent.

No. 10732

August 21, 1980 615 P.2d 957

[Rehearing denied October 24, 1980]

*Johnson, Belaustegui & Robison,* of Reno, for Appellant.

*Echeverria & Osborne, Chartered,* and *Nathan M. Jenkins,*
of Reno, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

Dr. Charles McCuskey commenced this action against attorney Samuel Bull to recover damages for abuse of process. It was his contention that attorney Bull, acting for Catherine Doucette, instituted a malpractice suit against him for the ulterior purpose of coercing a nuisance settlement knowing that there was no basis for the claim of malpractice. A jury returned its verdict for Dr. McCuskey, awarding him $35,000 as compensatory and $50,000 as punitive damages. Bull has appealed from the judgment entered upon jury verdict and from denial of his post-trial motion for judgment n.o.v., or in the alternative, a new trial. The main claim of error is that the evidence does not show an abuse of process. Other errors also are assigned and will be considered.

On May 20, 1974, Catherine Doucette, an 86-year-old woman, was admitted to St. Mary's Hospital following an automobile accident. She had sustained multiple injuries, including fractures of the left wrist, the patellas, and the right

femur. Because of her age, she also suffered from an arteriosclerotic heart disease, and was senile. Dr. Charles McCuskey was called to take care of the orthopedic problems, while other doctors managed her other disabilities. The following August, she was transferred from St. Mary's Hospital to the Physicians' Hospital for Extended Care. She was depressed, uncooperative and uncommunicative. While there, she developed bed sores on her hips and heels. Because of this, her nephew, Milan Jeffers, who had been appointed her guardian, dismissed Dr. McCuskey and replaced him with Dr. Jack Sargent. Soon after the substitution, Jeffers inquired of Dr. Sargent whether there had been malpractice by Dr. McCuskey and was told that there was none. Apparently, her bed sores resulted either from her refusal to follow directions, or her inability to do so, and were not traceable to any conduct of the doctor.

In October 1974, Milan Jeffers contacted attorney Bull. An action charging Dr. McCuskey with malpractice, and the Physicians' Hospital with negligence then was filed. The complaint was filed on the basis of Jeffers' statement that the condition of his aunt, Catherine Doucette, had greatly deteriorated, and upon photographs showing bed sores, which photographs were taken by Bull's assistant.

Before filing suit, attorney Bull did not examine nor did he obtain medical records from St. Mary's Hospital or Physicians' Hospital. He did not confer with a doctor. Neither did he submit his client's claim to the Joint Screening Panel, established pursuant to an agreement between the Washoe County Medical Society and the Washoe County Bar Association.[1]

After filing suit, attorney Bull did not secure the deposition of Dr. McCuskey, nor of any doctor. He did not retain an expert for trial, nor attempt to do so.

Shortly before trial, the claim against Physicians' Hospital was settled for $750. Dr. McCuskey refused to authorize his carrier to settle for any amount, although settlement of the claim against him also could have been made for $750.

During trial, attorney Bull called Dr. McCuskey incompetent, a fumble-fingered fellow, a liar, a scoundrel, a damned idiot. He also said, "[i]t will be a cold day in hell when I let that dum-dum take care of my mother." Of the doctor he also stated, "[h]e will lie under oath, steal an elderly woman's redress, cheat if he can get away with it, and all that is left for

---

[1] Since April 30, 1975, state statute provides for the joint medical-legal screening panel. See 1975 Nev. Stats. ch. 302.

him is to make a pact with the devil and murder those who would oppose him.''

The jury to whom the medical malpractice action was presented, quickly returned its verdict for Dr. McCuskey. Dr. McCuskey then commenced this action against attorney Bull for abuse of process.

1. The main assignment of error is that the evidence may not be viewed as establishing the elements of the tort of abuse of process. Recently, this court had occasion to consider that tort. Nevada Credit Rating Bur. v. Williams, 88 Nev. 601, 503 P.2d 9 (1972). We there noted that the two essential elements of abuse of process are an ulterior purpose, and a willful act in the use of the process not proper in the regular conduct of the proceeding. The malice and want of probable cause necessary to a claim of malicious prosecution are not essential to recovery for abuse of process. Moreover, we mentioned that abuse of process hinges on the misuse of regularly issued process in contrast to malicious prosecution which rests upon the wrongful issuance of process.

In *Nevada Credit Rating Bur.* we sustained an award of compensatory and punitive damages for abuse of process. In that case, property valued at more than $30,000 was attached to secure an alleged debt of less than $5,000. We deemed that to be a willful misuse of the ancillary remedy of attachment for the ulterior purpose of coercing payment of the sum claimed to be due.

In the case at hand, it is asserted that the process (complaint and summons) charging Dr. McCuskey with malpractice was misused for the ulterior purpose of coercing a nuisance settlement. In considering all evidence presented, it was permissible for the jury to conclude that attorney Bull had utilized an alleged claim of malpractice for the ulterior purpose of coercing a nuisance settlement. His offer to settle the case for the minimal sum of $750 when considered in the light of his failure adequately to investigate before deciding to file suit and the total absence of essential expert evidence, supports such a conclusion by the jury, and we may not set it aside.

2. Next, it is asserted that certain rulings of the trial court in the medical malpractice action preclude recovery by Dr. McCuskey in this case by reason of the doctrine of collateral estoppel. This contention is without substance.

In the malpractice case the district court denied Dr.

McCuskey's pre-trial motion for summary judgment, and also his motion for a directed verdict tendered during trial. It is asserted that those rulings conclusively establish that the Doctor's instant action for abuse of process is without merit.

The relitigation of an issue that has been finally resolved in a prior case may be barred by the doctrine of collateral estoppel. Clark v. Clark, 80 Nev. 52, 389 P.2d 69 (1964). The mentioned rulings in the earlier malpractice action were interlocutory rather than final. The only final determination in that action was a judgment entered upon a jury verdict that Dr. McCuskey was not liable for malpractice. The doctrine of collateral estoppel is not concerned with interlocutory rulings.

3. It is asserted that the evidence simply does not support either the award of $35,000 in compensatory damages or $50,000 in punitive damages.

a. The compensatory damages recoverable in an action for abuse of process are the same as in an action for malicious prosecution, Prosser, Law of Torts at 858 (4th ed. 1971), and include compensation for fears, anxiety, mental and emotional distress. Spellens v. Spellens, 317 P.2d 613 (Cal. 1957). In Miller v. Schnitzer, 78 Nev. 301, 371 P.2d 824 (1962), a malicious proscution case, we wrote:

> [T]he plaintiff may recover general money damages to compensate for injury to reputation . . ., humiliation, embarrassment, mental suffering and inconvenience, provided they are shown to have resulted as the proximate consequence of the defendant's act. These elements of damage are wholly subjective. The monetary extent of damage cannot be calculated by reference to an objective standard. The extent of such damage, by its very nature, falls peculiarly within the province of the trier of fact, in this case, a jury. (Citations) The only limitation upon the judgment of the jury in this regard is that the damages thus awarded must not have been given under the influence of passion or prejudice. NRCP 59(a)(6).

In the *Miller* case we affirmed a compensatory damage award of $30,000, noting that the record, when read in the light most favorable to plaintiff, contained substantial evidence tending to prove damage to reputation, extreme embarrassment, humiliation, mental suffering and inconvenience as the proximate

consequence of the defendant's conduct. That observation applies with equal force to the record now before us. The compensatory damage award of $35,000 is fully supported by the evidence.

b. In an action for the breach of an obligation not arising from contract, punitive damages may be recovered where the defendant has been guilty of oppression, fraud or malice, express or implied. NRS 42.010. It is suggested that malice is not shown, and, in any event, that the award of $50,000 is too high.

Malice may be established by showing that the defendant's conduct was willful, intentional and done in reckless disregard of its possible consequences. Nevada Credit Rating Bur. v. Williams, 88 Nev. 601, 503 P.2d 9 (1972). It was permissible for the jury to conclude that suit was filed against Dr. McCuskey and an offer to settle made with the intention to force a nuisance payment, and that this occurred intentionally and in reckless disregard of possible consequences. Accordingly, an award of punitive damages was within the province of the jury to allow.

Heretofore, we have recognized the subjective nature of punitive damages, Caple v. Raynel Campers, Inc., 90 Nev. 341, 526 P.2d 334 (1974), and the absence of workable standards by which to evaluate the propriety of such an award. Accordingly, we have allowed that determination to rest with the discretion of the trier of the fact, Midwest Supply, Inc. v. Waters, 89 Nev. 210, 510 P.2d 876 (1973), unless the evidence introduced at trial shows that the amount awarded by the jury would financially destroy or annihilate the defendant, Miller v. Schnitzer, supra, in which event we would attempt an appropriate adjustment of the award.

In the case at hand, trial evidence as to attorney Bull's net worth was not produced. Therefore, we are unable to conclude that the award was excessive.

4. The denigrating comments of attorney Bull concerning Dr. McCuskey during the trial of the malpractice case (incompetent, a liar, a scoundrel, a damned idiot, etc.) were received in evidence in this case to show malice. A prior motion in limine to preclude such evidence was tendered and denied. This ruling is asserted to be reversible error.

As a general proposition an attorney at law is absolutely

privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding. Restatement (Second) of Torts § 586 (1976); Richards v. Conklin, 94 Nev. 84, 575 P.2d 588 (1978). The privilege rests upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to obtain justice for their clients.

The malpractice complaint placed in issue Dr. McCuskey's competence as a physician. When Dr. McCuskey testified in that case, he placed in issue his credibility. Attorney Bull's comments may be understood to pertain to either Dr. McCuskey's competence or his credibility, and therefore, are privileged. The motion in limine should have been granted.

It does not follow, however, that the error in admitting such evidence requires this court to set aside the judgment entered upon jury verdict. An error in the reception of evidence which does not affect the substantial rights of the parties must be disregarded as harmless. NRCP 61.

We already have mentioned the evidence that would allow the jury to find malice and award punitive damages. With this in mind, it is evident that the reception of attorney Bull's denigrating comments was not essential to the punitive damage issue and, therefore, may be deemed harmless.

Although the denigrating comments of attorney Bull regarding Dr. McCuskey were privileged, and alone would not supply a basis for liability in damages, it does not follow that an attorney may so conduct himself without fear of discipline. Indeed the oath taken by an attorney licensed to practice in Nevada states in part "that I will abstain from all offensive personalities and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged . . ." Moreover, SCR 188(4) commands that a lawyer should never be unfair or abusive or inconsiderate to adverse witnesses or opposing litigants. His obligation to present his client's cause vigorously does not contemplate violation of the attorney's oath or of the standards of conduct.

5. We shall not comment upon the remaining assignment of error—that of the impeachment of a witness by reference to his prior felony conviction, when that conviction had been satisfied by an honorable discharge from probation and the witness released from all penalties and disabilities resulting

therefrom—since the impeaching evidence already was before the jury through an earlier witness without objection.

Affirmed.

Mowbray, C. J., and Batjer and Manoukian, JJ., and Zenoff, Sr. J.,[2] concur.