DALTON WELLMAN, SR., DALTON E. WELLMAN, JR., WALLACE K. WELLMAN AND EDGAR E. WELLMAN, Appellants, v. R.H. FOX, JR., EDWARD B. FOX, THOMAS W. ERVIN, KENNETH WEEKS, ALGIGNON SMITH, ALTON PALMER, L.H. STRONG AND DAVID BISHOP, Respondents.

No. 21966

January 24, 1992                                    825 P.2d 208

*Carl E. Lovell,* Las Vegas, for Appellants.

*Levy, Goldman & Levy,* Los Angeles, California, for Respondents.

# OPINION

*Per Curiam:*

In August, 1983, Operating Engineers Local 501, an organization comprised of building maintenance engineers in the Southern Nevada and Southern California region, held elections for officers. The organization's chief executive officer is accorded the title of Business Manager. In the 1983 election, two of the candidates for Business Manager were incumbent R.H. Fox (Bob Fox) and Dalton Wellman, Jr. (Dee Wellman).

Prior to the announcement of candidates for the 1983 election, appellants Dee and Dalton Wellman, Sr. distributed a small card of introduction to union members at union meetings in Las Vegas, Nevada, and Anaheim, California, describing the Wellman family's involvement with the union. It described the employment and union backgrounds of Dee, Dalton, Wallace and Edgar Wellman, and it urged members to vote in the upcoming election. The card did not indicate that any of the Wellmans would be candidates in that election.

Incumbent business manager Fox distributed a flyer to all Local 501 members in response to the Wellmans' card of introduction. The front side of the flyer contains a three-paragraph letter from Bob Fox that warns against the danger that the Wellman "gang" presents to Local 501's members and assets. Furthermore, the flyer asserts that the leader of the gang was thrown off of the union's executive board for obtaining funds fraudulently, and that the gang is "replete with nepotism" and "even includes a strikebreaker." On the reverse side of the flyer, the Wellmans' card of introduction is reprinted and annotated. The annotations purport to disprove factual assertions implied by the card, such as the assertion that the Wellmans are a financially successful union family. The reverse flyer refers to the Wellmans as the "Dalton Gang," and implies that Barney Vardiman, who is a strikebreaker, is a member of the gang, even though he was not mentioned on the card. The flyer also advises union voters not to be "conned." Finally, Dee Wellman's Chapter VII personal bankruptcy petition from 1980 is reprinted on the reverse side of the flyer beneath the annotations.

The Wellmans object to the Fox flyer on the grounds that no one in their family has ever been convicted of a crime or involved with a criminal group or gang. Similarly, they complain that the statement that Dalton Wellman was expelled from the union's executive board for "misuse of funds" overstated the truth. Dalton Wellman had in fact been disqualified from the board by the membership in an internal union proceeding for "double

dipping."[1] However, Bob Fox testified that his flyer was mere election propaganda, and that the threat posed by the "Dalton Gang" was merely that they were inept and inexperienced. He also stated that his comment regarding "nepotism" merely referred to the fact that Dee Wellman represented Dalton during his membership trial. Fox admitted that the Wellmans had never been in a position where they could have hired each other. Fox also stated that he knew when he sent out the flyer that Edgar and Wallace Wellman were not candidates in the 1983 election. Furthermore, he did not know the extent of strikebreaker Barney Vardiman's connection to the Wellmans.

Bob Fox was re-elected by a large margin. In January of 1984, appellants commenced a defamation and libel action against Bob Fox, union business representative Kenneth Weeks, and members of the union's executive board who were in office when the flyer was distributed and assisted in its distribution. All respondents except Bob Fox were subsequently dismissed from the action without prejudice.

The Wellmans' complaint alleged that the statements contained in the Fox flyer were false and malicious. It asserts that reference to the Wellmans as the "Dalton Gang" was a deliberate attempt to associate the Wellman family with a notorious criminal gang from the early 1900's, and that the flyer implies that the Wellmans are thieves. The Wellmans also alleged damage to both their social and business reputations and requested compensatory damages to each of them in excess of $10,000 and punitive damages in excess of $10,000.

At a bench trial, the judge found that the Wellmans were public figures, that the statements occurred in the context of a labor dispute, and that both of these factors implicated the "actual malice" standard. *See* New York Times v. Sullivan, 376 U.S. 254, 279-80 (1964). Because the judge found that the statements contained in the Fox flyer were all either opinion or politically-motivated hyperbole, he concluded that appellants failed to satisfy the actual malice standard. The judge also awarded attorney's fees to Fox amounting to $5,000 because he found appellants' action frivolous. We affirm the judgment.

To prevail on a claim of libel, a party must show publication of a false statement of fact, as opposed to opinion. Nevada Ind. Broadcasting v. Allen, 99 Nev. 404, 410, 664 P.2d 337, 341 (1983) (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 339

---

[1]Dalton Wellman's "double dipping" consisted of submitting claims for compensation for time lost as a result of attending union meetings while someone simultaneously was punching him in as present at his job.

(1974)). Whether the objectionable statements constitute fact or opinion is a question of law. Harte-Hanks, Inc. v. Connaughton, 491 U.S. 657, 688 (1989). Consequently, actions involving libel must be reviewed de novo on appeal. Milkovich v. Lorain Journal Co., 497 U.S. 1, 17, 110 S.Ct. 2695, 2705 (1990). Such a review also must examine the context in which the statements are made to determine "whether they are of a character which the First Amendment protects." *Id. See also* Las Vegas Sun v. Franklin, 74 Nev. 282, 329 P.2d 867 (1958).

It is well-established that statements are libelous only if they are presented as fact rather than opinion, and only if the facts asserted are false. *See, e.g., Nevada Ind. Broadcasting,* 99 Nev. at 410-13, 664 P.2d at 341-43. The distinction between fact and opinion is often a close one, with some statements containing elements of both. Nevada Ind. Broadcasting v. Allen, 99 Nev. 404, 411, 664 P.2d 337, 342 (1983). The Wellmans assert that the statements contained in the Fox flyer constitute actionable libel because they imply assertions that the Wellmans are dishonest, crooked, and untrustworthy. Fox responds that his flyer is merely a statement of opinion, and that to the extent it contains factual assertions, these assertions are true.[2]

The United States Supreme Court recently addressed the issue of how to distinguish fact from opinion in Milkovich v. Lorain Journal Co., 497 U.S. 1, 110 S.Ct. 2695 (1990). *Milkovich* involved a libel action against the author of a newspaper column who implied that a wrestling coach had lied under oath regarding an altercation that had occurred between his team and another team during a wrestling match. *Milkovich,* 497 U.S. at 3, 110 S.Ct. at 2697-98. The Supreme Court concluded that the statements were libelous if false because a fact finder could conclude that they implied the factual assertion that Milkovich committed perjury in a judicial proceeding. *Id.* at 21, 110 S.Ct. at 2707.

In the instant case, with respect to the first side of the Fox flyer, the assertions presented therein appear to be factual. Fox asserts that the Wellmans are dishonest by stating:

---

[2]At trial, several witnesses testified as to the impressions they received from the flyer. Expert witness Dr. Felicia Campbell of the Department of English at the University of Nevada testified that the flyer consisted primarily of factual assertion, not opinion. In contrast, expert Tony Cosola, a former Department of Labor employee with experience investigating union election disputes, testified that the statements in the flyer were primarily opinion. Union member Thomas Ervin, who had received the Fox flyer in the mail, testified that he believed that the first side of the flyer contained fact, not opinion, and that he did not believe that any of the statements contained therein were false. However, he also testified that he thought that the message of side one was "[j]ust to vote for Bob." Because this case requires de novo review, we have relied primarily on our own interpretation of the flyer.

You will discover as others have that the story they want you to believe and the truth of the matter are two very different things. This *gang is led by a member who was thrown off of the local union executive board for obtaining union funds fraudulently,* the only such blemish in our proud history. This gang is *replete with nepotism,* and the real topper is it *even includes a strikebreaker.*

(Emphasis added.) We conclude that the underscored statements constitute factual assertions under *Milkovich.* However, these factual assertions are not actionable unless they have no basis in truth. *Id.* at 22, 110 S.Ct. at 2707-08. Dalton Wellman's expulsion from the union's executive board for fraudulently submitting duplicative time sheets was affirmed by the Ninth Circuit Court of Appeals. *See* Wellman v. Int. Union of Operating Engineers, 812 F.2d 1204, 1205 (9th Cir. 1987). In addition, Fox demonstrated that Barney Vardiman was a former strikebreaker who was receiving at least nominal support from Dalton Wellman. Similarly, the factual statements on the reverse side of the Fox flyer were proven at trial to be true. Thus, we conclude that these statements do not form the basis for a claim of libel.

Certain secondary statements in the Fox flyer suggest exaggeration or overbroad generalization. These would include reference to the Wellmans as the "Dalton Gang" and the reference to Vardiman as being an intimate of this group. However, such exaggerated statements are permissible in contexts in which the statements would be interpreted by a reasonable person as mere rhetorical hyperbole. *See, e.g.,* Letter Carriers v. Austin, 418 U.S. 264, 283 (1974). We conclude that in the context of a union election, Fox's exaggerations and overbroad generalizations were not libelous.

If the primary facts asserted in the Fox flyer had been false, we would have had to consider whether the context of the statements as made against allegedly public figures would exempt Fox from liability for statements made in good faith. Curtis Publishing Co. v. Butts, 388 U.S. 130 (1967); New York Times v. Sullivan, 376 U.S. 254, 271-73 (1964). However, because we conclude that Fox's assertions are founded on truth, we need not address this issue.

We also reject the Wellmans' argument that the district court should not have dismissed their action against the other members of the union's executive board. Even if the Fox flyer had been found to be libelous, dismissal of the other defendants was proper under the Labor Management Reporting and Disclosure Act,

which prohibits union officers from censoring campaign literature and requires them to comply with all reasonable requests by a candidate to distribute campaign literature. 29 U.S.C.A. § 481(c) (1985).

Finally, the Wellmans object to the district court's ruling that they had waived their right to a jury trial by failing to timely request one pursuant to NRCP 38.[3] They argue that even if they did not comply with the procedure set forth in the statute, they have an inviolable right to a jury trial under Article I, Section 9 of the Nevada Constitution. This section states in pertinent part:

> In all criminal prosecutions and civil actions for libels, the truth *may* be given in evidence to the Jury; and if it shall appear to the Jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the party shall be acquitted or exonerated.

(Emphasis added.) From the plain language of this provision, we conclude that a jury trial is not mandated for all libel actions irrespective of a party's compliance with the procedures for requesting such trials. Because we also find that the Wellmans did not comply with NRCP 38, we hold that the district court judge acted within his discretion in refusing to grant a jury trial.

We affirm the district court's ruling in favor of Fox. We also conclude, however, that appellants' claim was not so meritless on appeal to warrant an award of attorney's fees to respondents.

---

[3]NRCP 38(b) states:

> Any party may demand a trial by jury . . . by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than the time of the entry of the order first setting the case for trial.