RICHARD POSADAS, Appellant, v. THE CITY OF RENO, HAL SCHILLING, ROBERT BRADSHAW, RICHARD KIRKLAND and THOMAS W. ROBINSON, Respondents.

No. 23034

May 7, 1993                                                     851 P.2d 438

*James Andres Boles,* Reno, for Appellant.

*Patricia A. Lynch,* Reno City Attorney, and *Stephen F. Volek* and *William A. Baker,* Deputy City Attorneys, Reno, for Respondents.

## OPINION

*Per Curiam:*

Appellant Richard Posadas (Posadas), an officer with the Reno

Police Department (RPD), was accused of attempting to use his status as a peace officer to influence a traffic court proceeding. A subsequent investigation resulted in Posadas's termination, which was reduced to a suspension after Posadas appealed to an arbitration panel. During the controversy, the RPD issued a press release stating that Posadas had lied under oath. Posadas brought suit, alleging numerous causes of action, including claims for defamation, intentional infliction of emotional distress, and abuse of process. The district court entered summary judgment in favor of each respondent on every claim. We conclude that: (1) with regard to the defamation claim, the press release was capable of a defamatory construction, and genuine issues of material fact remained as to the truth or falsity of the statement and whether it was made with "actual malice"; (2) with regard to the intentional infliction of emotional distress claim, genuine issues of material fact remained as to whether the issuance of the press release constituted extreme and outrageous conduct, whether it was done with the intent of, or reckless disregard for, causing emotional distress, and whether Posada suffered severe emotional distress as a result; and (3) with regard to the abuse of process claim, a genuine issue of material fact remained as to whether the RPD brought charges against Posadas for the improper purpose of forcing his resignation. Accordingly, we reverse and remand for trial on Posadas's claims for defamation, intentional infliction of emotional distress, and abuse of process. We affirm the judgment of the district court in all other respects.

### Facts

Posadas has been an officer with the RPD for nearly twenty years. He has held the rank of sergeant for more than ten years. In November, 1988, Posadas became aware of a traffic citation pending against Pam Drum (Drum), a local news personality. Posadas knew Drum socially and professionally.

On November 22, 1988, Posadas accompanied Drum to Reno Municipal Court. Prior to the hearing, Assistant City Attorney Mike Halley (Halley) and Posadas discussed the case. Although Posadas was dressed in civilian clothing, Halley's impression was that Posadas was speaking as a representative of the RPD. After the matter was heard in the Reno Municipal Court, the judge dismissed the charges against Drum.

An officer reported to Assistant Chief of Police Richard Kirkland (Kirkland) that Posadas had allegedly improperly attempted to obtain dismissal of the traffic citation. Kirkland referred the matter to Chief Robert Bradshaw (Bradshaw), who ordered the Investigative Services Bureau of RPD to conduct a criminal investigation. RPD referred the results of the investiga-

tion to a specially appointed deputy city attorney to determine whether to prosecute Posadas under the Reno Municipal Code. The special deputy city attorney elected to prosecute, and on May 24, 1989, she obtained a conviction in Reno Municipal Court on the charge of obstructing a peace officer. Posadas appealed de novo to the district court. On August 3, 1989, after a two-day trial, the district court acquitted Posadas.

When Bradshaw ordered the criminal investigation, he also ordered that an internal personnel investigation be conducted to determine whether Posadas had violated any of RPD's rules of conduct. Lieutenant Pennington (Pennington), the police lieutenant assigned to conduct such investigations, was in charge. Pennington determined that sufficient evidence existed to discipline Posadas. After intermediate review, Bradshaw concurred and recommended that Posadas be discharged from his job. On March 17, 1989, Hal Schilling (Schilling), the Reno City Manager, terminated Posadas.

After hearings on August 16 and 17, 1989, labor arbitrators, in a 2-1 decision, reduced Posadas's termination to a forty-five day suspension and ordered his reinstatement with back pay and benefits. The dissenting arbitrator concurred in the decision to reduce Posadas's discharge to a suspension, but he would have also demoted Posadas from sergeant to police officer.

After the hearing, Bradshaw prepared a press release[1] which stated that Posadas had "admitted he lied under oath." In fact, Posadas did not admit lying under oath in any hearing or document. Posadas admitted under oath, however, that he had lied during an investigation. Specifically, Posadas had acknowledged during his sworn testimony that he had been untruthful to two police officers who had questioned him the morning of November 22, 1988, about the reason for his presence outside the Reno Municipal Court with Drum.

On August 21, 1989, Posadas returned to work. On April 6, 1990, Posadas filed a complaint stating numerous causes of action against the respondents, City of Reno (City), Schilling, Bradshaw, Kirkland, and Thomas Robinson (Robinson), including claims for defamation, intentional infliction of emotional distress,

---

[1]The press release stated in part:

> While Chief Robert Bradshaw was not happy with the board's decision, Sgt. Posadas exercised his right to appeal and the board has spoken. The Department will not appeal the board's decision.
> Further, Chief Bradshaw stated that Posadas's greatest challenge is to regain his credibility with his peers after *having admitted he lied under oath*. It is hoped that the officers of the Department will give Sgt. Posadas an opportunity to re-gain [sic] their confidence and trust.

(Emphasis added.)

and abuse of process. On December 31, 1991, the district court granted respondents' motion for summary judgment on all issues except for defamation, stating: "All of plaintiff's claims lack a presentation of any evidence which would support the claim." The district court ordered the parties to file supplemental briefs with respect to the defamation claim, and in an order filed on January 31, 1992, it extended the order granting summary judgment to the defamation claim as well. On February 6, 1992, the district court entered judgment in favor of the respondents and against Posadas.

## Discussion

### Standard of Review

Under NRCP 56(c), the district court may only grant summary judgment when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Wiltsie v. Baby Grand Corp., 105 Nev. 291, 292, 774 P.2d 432, 433 (1989). A genuine issue of material fact is one where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Valley Bank v. Marble, 105 Nev. 366, 367, 775 P.2d 1281, 1282 (1989). The pleadings and proof offered below are construed in the light most favorable to the non-moving party. Hoopes v. Hammergren, 102 Nev. 425, 429, 725 P.2d 238, 241 (1986). However, the non-moving party must, by affidavit or otherwise, set forth specific facts demonstrating the existence of a genuine issue for trial or have summary judgment entered against him. Collins v. Union Fed. Savings & Loan, 99 Nev. 284, 294, 662 P.2d 610, 618-19 (1983). The non-moving party's documentation must be admissible evidence, and he or she "is not entitled to build a case on the gossamer threads of whimsy, speculation and conjecture." Id. at 302, 662 P.2d at 621 (quoting Hahn v. Sargent, 523 F.2d 461, 467 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976)). Trial judges are to exercise great caution in granting summary judgment, which is not to be granted if there is the slightest doubt as to the operative facts. Mullis v. Nevada National Bank, 98 Nev. 510, 512, 654 P.2d 533, 535 (1982).

### Defamation

Posadas contends Bradshaw defamed him when Bradshaw accused Posadas in a press release of having "lied under oath." Although Posadas admitted, under oath, that he had lied to two police officers during an investigation, he never admitted to lying

under oath. We find the wording of the press release to be ambiguous and susceptible to the false impression that Posadas had perjured himself.

To prevail on a defamation claim, a party must show publication of a false statement of fact. Wellman v. Fox, 108 Nev. 83, 86, 825 P.2d 208, 210, (1992), *cert. denied,* ...... U.S. ......, 113 S.Ct. 68 (1992). In Branda v. Sanford, 97 Nev. 643, 637 P.2d 1223 (1981), we stated:

> It is generally accepted that for both libel and slander it is a question of law and, therefore, within the province of the court, to determine if a statement is capable of a defamatory construction. If susceptible of different constructions, one of which is defamatory, resolution of the ambiguity is a question of fact for the jury.

*Id.* at 646, 637 P.2d at 1225-26 (citations omitted); *see* Nevada Ind. Broadcasting v. Allen, 99 Nev. 404, 410, 664 P.2d 337, 342 (1983). A statement is defamatory when, "[u]nder any reasonable definition[,] such charges would tend to lower the subject in the estimation of the community and to excite derogatory opinions against him and to hold him up to contempt." Las Vegas Sun v. Franklin, 74 Nev. 282, 287, 329 P.2d 867, 869 (1958).

The statement made in the press release that Posadas "admitted he lied under oath" makes a factual assertion relating to Posadas's integrity and his ability to perform his job of enforcing the law. We conclude, as a matter of law, that the statement is capable of a defamatory construction in that it imputes dishonest and possibly unlawful conduct to Posadas. Accordingly, a jury must be allowed to determine whether the statement has any "basis in truth," *Wellman,* 108 Nev. at 88, 825 P.2d at 211, since the truth or falsity of an allegedly defamatory statement is an issue of fact properly left to the jury for resolution.[2] Nevada Ind. Broadcasting v. Allen, 99 Nev. 404, 413, 664 P.2d 337, 343 (1983).

Review of an action involving libel "must examine the context in which the statements are made to determine 'whether they are of a character which the First Amendment protects.'" *Wellman,* 108 Nev. at 87, 825 P.2d at 210 (quoting Harte-Hanks Communi-

---

[2]In Milkovich v. Lorain Journal Co., 497 U.S. 1, 21-22 (1990), the United States Supreme Court determined that a newspaper column indicating that a high school wrestling coach lied under oath could be construed as a defamatory statement of fact, was therefore actionable, and the matter, including truth or falsity, should be resolved by the fact finder.

cations v. Connaughton, 491 U.S. 657, 688 (1989)). As a police officer, Posadas was a public official. *See* Time, Inc. v. Pape, 401 U.S. 279, 284 (1971); Gray v. Udevitz, 656 F.2d 588, 591 (10th Cir. 1981); Willis v. Perry, 677 P.2d 961, 963-64 (Colo.Ct.App. 1983); Ammerman v. Hubbard Broadcasting, Inc., 572 P.2d 1258, 1260-61 (N.M.Ct.App. 1977), *cert. denied,* 436 U.S. 906 (1978). Because of the importance to the public of being informed as to the conduct and integrity of its public servants, Posadas's right to protection against untrue attacks must be balanced against the First Amendment interest in holding local government actors accountable. Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-43 (1974). The propriety of the district court's summary adjudication of Posadas's claim therefore rests on Posadas's ability to show that the allegedly defamatory statement was made with "actual malice." *See* New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 283 (1964); *Time, Inc.,* 401 U.S. at 284, 292.

Actual malice is defined as knowledge of the falsity of a statement or a reckless disregard for its truth. Nevada Ind. Broadcasting v. Allen, 99 Nev. 404, 414, 664 P.2d 337, 344 (1983). Reckless disregard for the truth may be defined as a high degree of awareness of the probable falsity of a statement. *Id.* It may be found where the defendant entertained serious doubts as to the truth of the statement, but published it anyway. *Id.* As such, it is a subjective test, focusing on what the defendant believed and intended to convey, and not what a reasonable person would have understood the message to be. *Id.* at 415, 664 P.2d at 344. Evidence of negligence, motive, and intent may cumulatively establish necessary recklessness to prove actual malice in a defamation action. *Id.*

In *Allen,* the plaintiff, who was running for the Republican gubernatorial nomination, appeared on a televised political question and answer program. *Id.* at 408, 664 P.2d at 340. Before the broadcast, the program moderator, employed by the television station, discovered that a check to cover the plaintiff's advertising at the station had been returned to the station due to insufficient funds. *Id.* During the live broadcast, the moderator questioned the plaintiff as to why the check bounced and what a political candidate who did not pay his bills would do if allowed to handle state funds, and the moderator implied that the plaintiff was not an honorable candidate. *Id.* On reviewing a jury award for the plaintiff of $675,000, we held there was sufficient evidence in the record to support the jury finding of actual malice. *Id.* at 415-16, 664 P.2d at 345. Some of the factors we deemed notable were: (1) the moderator deliberately waited until the plaintiff was on live

television to ask him about the check; (2) the moderator knew that the plaintiff's campaign agency, and not the plaintiff, had written the check, and yet he referred to the check as "your check"; and (3) the moderator's trial testimony contradicted previous deposition testimony that he intended to mention the bounced check during the live broadcast and to convey the impression that the plaintiff was not honorable. *Id.*

In the instant case, Bradshaw, as a law enforcement officer, knew or should have known that Posadas had not admitted to committing perjury, and that therefore the press release was capable of a misleading and false construction. Posadas produced evidence of a pattern of conduct by the RPD suggesting that the press release was issued with the knowledge it was false or with a reckless disregard for its truth or falsity. Posadas submitted evidence that he was in disfavor with RPD's administration, that Bradshaw would not speak with him on a social or professional level, and that Robinson disliked him. Posadas's assertion that RPD's intent was to force him to leave RPD is supported by the fact that the special assistant city attorney offered to drop the criminal charges against him if he would voluntarily resign from RPD. Posadas also submitted evidence that the internal investigation was not conducted in the usual manner of having an officer's immediate supervisor control the investigation. Instead, the matter was referred to Internal Affairs, which is normally assigned the more serious violations. The investigation was "condoned" by Bradshaw and Posadas was terminated as Robinson recommended.

Posadas contends that, under the totality of the circumstances, he produced sufficient evidence for a jury to find actual malice. We agree. When the press release is combined with the evidence suggesting ill will toward Posadas on the part of Bradshaw and the RPD, we conclude, under *Allen,* that there is sufficient evidence for a jury question on the issue of actual malice.

At the time the district court granted summary judgment, genuine issues of material fact remained concerning the truth or falsity of the allegedly defamatory statement and whether the statement was made with actual malice, i.e., knowledge of its falsity or with reckless disregard for the truth. Because these issues were issues of fact properly left for resolution by a jury, we conclude the district court erred in granting summary judgment against Posadas.

*Intentional Infliction of Emotional Distress*

In his complaint, Posadas claims that the City, Schilling,

Bradshaw, Kirkland, and Robinson subjected him to an intentional infliction of emotional distress. In Star v. Rabello, 97 Nev. 124, 625 P.2d 90 (1981), we stated:

> Generally, the elements of this cause of action are (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation.

*Id.* at 125, 625 P.2d at 91-92 (citation omitted).

In Branda v. Sanford, 97 Nev. 643, 637 P.2d 1223 (1981), the appellant brought suit alleging slander and intentional infliction of emotional distress resulting from the respondent's verbal abuse of the appellant in a casino. *Id.* at 645, 637 P.2d at 1224. This court held, "The jury was entitled to determine, considering prevailing circumstances, contemporary attitudes and [the appellant's] own susceptibility, whether the conduct in question constituted extreme outrage." *Id.* at 649, 637 P.2d at 1227. Whether the issuance of a press release which could be interpreted as stating that a police officer committed perjury is extreme and outrageous conduct is a question for the jury. The jury should also make the factual determination, similar to the "actual malice" determination in Posadas's defamation claim, whether the press release was intended to cause emotional distress or whether it was issued with reckless disregard as to such a probability. *See id.* at 648, 637 P.2d at 1227.

Posadas's affidavit asserts that, as a result of the press release, he "was subjected to great ridicule and embarrassment" and was harmed both professionally and personally. His affidavit also asserts that, as a result of the entire incident, he suffered "severe emotional distress as evidenced by depression and physical ailments that have required hospitalization," and he "sought the assistance of both medical and psychological professionals to deal with the physical and psychological symptoms."

We conclude that genuine issues of material fact remain concerning Posadas's claim for intentional infliction of emotional distress which precludes summary judgment. Posadas supplied sufficient evidence during the summary judgment proceeding to raise the issues of whether the press release constituted extreme and outrageous conduct, whether the press release was issued with the intent of, or reckless disregard for, causing emotional distress, and whether Posadas suffered severe and extreme emotional distress occasioned by the press release. These are questions for a jury, and the district court erred in deciding them in a summary proceeding.

*Abuse of Process*

The two elements required to establish the tort of abuse of process are: "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." Kovacs v. Acosta, 106 Nev. 57, 59, 787 P.2d 368, 369 (1990). An ulterior purpose is any improper motive underlying the issuance of legal process. Laxalt v. McClatchy, 622 F.Supp. 737, 751 (D.Nev. 1985). A showing of malice and want of probable cause is not necessary to recover for abuse of process. Bull v. McCuskey, 96 Nev. 706, 709, 615 P.2d 957, 960 (1980), *overruled in part on other grounds by* Ace Truck v. Kahn, 103 Nev. 503, 746 P.2d 132 (1987); Nevada Credit Rating Bur. v. Williams, 88 Nev. 601, 606, 503 P.2d 9, 12 (1972). In *Bull,* this court upheld a jury award for abuse of process where the respondent's attorney, with knowledge that there was no basis for the claim, brought suit against a physician for medical malpractice with the ulterior purpose of coercing a nuisance claim settlement. *Bull,* 96 Nev. at 707, 709, 615 P.2d at 959-60. In *Nevada Credit Rating Bur.,* this court sustained an award for abuse of process where the respondent attached property valued greatly in excess of the alleged debt with the ulterior purpose of coercing payment. *Nevada Credit Rating Bur.,* 88 Nev. at 606-07, 503 P.2d at 12-13.

Posadas's claim for abuse of process rests on his assertion that the City wrongfully charged him with a criminal violation and then attempted to use the prosecution as a bargaining tool in obtaining a resignation from him. Posadas produced evidence that he was in disfavor with the RPD, that the RPD's methods and procedures for reviewing alleged misconduct by officers were capricious and vindictive, and that the allegations against him were handled more severely than was customary. He also presented evidence that, while the district attorney's office refused to prosecute him, a special assistant city attorney pursued the criminal charges. The city attorney, however, informed him the criminal charges would be dropped if he voluntarily resigned from the RPD. Posadas was eventually acquitted by the district court on these criminal charges.

We conclude that Posadas made a sufficient showing before the district court to avoid summary judgment on his abuse of process claim. Posadas presented to the district court sufficient evidence that criminal charges were brought against him for the purpose of

forcing his resignation to send the issue to the jury for a factual determination of the purpose behind the prosecution. Accordingly, issues of material fact remain and the district court erred in granting summary judgment.

We have carefully considered Posadas's other contentions of error and we conclude they lack merit. We hereby reverse that part of the summary judgment pertaining to Posadas's claims for defamation, intentional infliction of emotional distress, and abuse of process, and we remand this case to the district court for trial on these three causes of action. The judgment of the district court is in all other respects affirmed.