915 P.2d 279 (1996)
112 Nev. 62
George CIMINI, Appellant,
v.
NEVADA INSURANCE GUARANTY ASSOCIATION, Respondent.
No. 26488.
Supreme Court of Nevada.
April 30, 1996.
*280 Leslie Mark Stovall, Las Vegas, for Appellant.
Pico & Mitchell, Las Vegas; Hoffman, Test & Guinan, Reno, for Respondent.

OPINION
PER CURIAM:
Appellant George Cimini filed a claim against respondent Nevada Insurance Guaranty Association ("NIGA") for declaratory relief. The district court granted NIGA's motion for summary judgment on grounds that NRS 687A.100(1) required its obligation to be reduced by the amount recovered by Cimini under his underinsured motorist policy. Concluding that the district court erroneously granted NIGA's motion for summary judgment, we reverse and remand with instructions.

FACTS
George Cimini was involved in an automobile accident on August 21, 1991, while driving a vehicle owned by Lorilee Main, which collided with a vehicle driven by Kay Dyson. Dyson's vehicle was insured by a liability insurance policy issued by Allstate Insurance Company. Cimini settled with Allstate for its policy limit of $15,000.
Cimini had underinsured motorist coverage with Farmers Insurance Exchange ("Farmers"). As a result of the subject accident, Cimini recovered his underinsured motorist policy limit in the amount of $15,000 from Farmers.
AzStar Casualty Co. ("AzStar") issued a policy to Lorilee Main covering the 1987 Toyota automobile which Cimini was driving at the time of the accident.[1] The policy provided underinsured motorist coverage. On November 19, 1992, Azstar was declared insolvent and ordered liquidated by a court of competent jurisdiction; Azstar thus became an insolvent insurer within the meaning of NRS 687A.035. As a result of Azstar's insolvency, on March 9, 1993, and again on January 4, 1994, Cimini submitted a claim to the Nevada Insurance Guaranty Association ("NIGA"), which was denied based upon the provisions of NRS 687A.100(1).
On March 24, 1994, Cimini filed a complaint against NIGA alleging breach of contract, *281 breach of implied covenant of good faith and fair dealing, and requesting declaratory relief. The first two causes of action were eventually dismissed. On June 22, 1994, NIGA filed a motion for summary judgment, which the district court granted on October 20, 1994. The district court ruled that pursuant to NRS 687A.100(1), the statutory obligation of NIGA amounting to $15,000 had to be reduced by the $15,000 which Cimini recovered from his Farmers underinsured motorist policy. Thus NIGA's obligation was reduced to zero.
Cimini appeals, contending that the district court misinterpreted NRS 687A.100(1), and that the payment by Farmers should be deducted from the total damages, rather than from NIGA's obligation.

DISCUSSION
Summary judgment may be granted only when no genuine issue of material fact remains for trial and one party is entitled to judgment as a matter of law. Posadas v. City of Reno, 109 Nev. 448, 452, 851 P.2d 438, 441 (1993). In the present case, the issue is whether NIGA was entitled to summary judgment as a matter of law, under the terms of NRS 687A.100(1). Our standard of review is therefore plenary. Walker v. American Bankers Ins., 108 Nev. 533, 836 P.2d 59 (1992).
NIGA is a non-profit association of Nevada insurers created by statute. Nevada Ins. Guaranty v. Sierra Auto Ctr., 108 Nev. 1123, 1124, 844 P.2d 126, 127 (1992). The NIGA act contains twenty-five sections under chapter 687A, which relate to the organization, operations, duties, powers and responsibilities of NIGA. NRS 687A.100(1) relates to the exhaustion of remedies of the insured, stating:
Any person having a claim against his insurer, under any provision in his insurance policy, which is also a covered claim shall be required to exhaust first his right under the policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of recovery under the claimant's insurance policy.[2]
Under NRS 687A.060(1)(a),[3] the maximum amount of NIGA's obligation on a covered claim is $300,000 or the face amount of the policy issued by the insolvent insurer, whichever is less. In this case the policy limits on the AzStar policy are $15,000; therefore, the maximum amount of any potential covered claim against NIGA is $15,000.
The term "covered claim" is defined in NRS 687A.033(1):
"Covered claim" means an unpaid claim or judgment, ... which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer which becomes an insolvent insurer.
This case presents a first impression review of exhaustion of remedies by the insured under NRS 687A.100(1). The "exhaustion question" has been addressed in several other jurisdictions where the corresponding statutes under judicial review are similar to NRS 687A.100(1).[4] Although the language in many of the statutes is virtually identical, differing interpretations have emerged. Hetzel v. Clarkin, 244 Kan. 698, 772 P.2d 800, 803 (1989).
We initially note that we agree with Arizona Property & Casualty Ins. Guar. *282 Fund v. Herder, 156 Ariz. 203, 207, 751 P.2d 519, 523 (1988), which, in construing a clause almost identical to NRS 687A.100(1), observed that the second sentence "is neither a model of clarity nor an exemplar of the draftsman's craft." See also Int'l Collection Service v. Vermont Property & Casualty Ins., 150 Vt. 630, 555 A.2d 978, 980 (1988); Washington Ins. Guar. Ass'n v. McKinstry Co., 56 Wash.App. 545, 784 P.2d 190, 194 (1990). In light of such ambiguity, we look to the legislature's purpose in creating the NIGA act. See Sheriff v. Marcum, 105 Nev. 824, 826, 783 P.2d 1389, 1390 (1989) (a statute that is ambiguous should be construed in line with the legislative intent, reason and public policy). The language of NRS 687A.060(1)(b) reveals the intended purpose of the NIGA act, declaring that NIGA is "deemed the insurer to the extent of its obligations on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." Thus, the purpose of the act is to place the insured in a position to recover the same amount available under the insured's policy, as if the insurer had not become insolvent, subject only to certain limitations on NIGA's liability. See Herder, 156 Ariz. at 205, 751 P.2d at 521; Connecticut Ins. Guar. Ass'n v. Union Carbide Corp., 217 Conn. 371, 585 A.2d 1216, 1225 (1991); Lucas v. Illinois Insurance Guaranty Fund, 52 Ill.App.3d 237, 10 Ill.Dec. 81, 83, 367 N.E.2d 469, 471 (1977); Int'l Collection, 555 A.2d at 980; McKinstry Co., 784 P.2d at 194.
In the present case, NIGA concedes that had AzStar remained solvent, Cimini would have been able to recover proceeds under the AzStar, Allstate and Farmers policies, assuming the damages exceeded $45,000.[5] Thus, applying the construction of the NIGA Act to the case at hand, we conclude that NIGA may not reduce its potential obligation by the amount recovered by Cimini under his underinsured motorist policy, but rather NIGA is obligated to cover any damages in excess of the Allstate and Farmers policies, up to the AzStar policy limit of $15,000.

CONCLUSION
For the reasons discussed above, we reverse the district court's order granting summary judgment, and remand for further proceedings on the issue of damages and the entry of judgment in accordance with the principles set forth in this opinion.
NOTES
[1] The AzStar policy limit was $15,000.
[2] NRS 687A.100(1) was amended by the Nevada Legislature in 1993. However, the claim in the present case was submitted and denied prior to the effective date of the amendment. Since there is no retroactive provision, the amendment is not applicable in this case.
[3] NRS 687A.060(1)(a) states:

1. The association shall:
(a) Be obligated to the extent of the covered claims existing prior to the determination of insolvency and arising within 30 days after the determination of insolvency, or before the policy expiration date if less than 30 days after the determination, or before the insured replaces the policy or on request effects cancellation if he does so within 30 days of the determination. The obligation shall include only that amount of each covered claim which is less than $300,000. In no event shall the association be obligated to a policyholder or claimant in amount in excess of the face amount of the policy from which the claim arises.
[4] The individual state legislatures drafted statutes based on the recommendations of the National Association of Insurance Commissioners ("NAIC").
[5] The issue of damages was not resolved by the district court.