**HARTFORD FIRE INSURANCE COMPANY, Plaintiff,**

v.

**George PERINOVIC, Defendant.**

**No. 93 C 0764.**

United States District Court,
N.D. Illinois, E.D.

Nov. 24, 1993.

Jay J. Glenn, Glenview, IL and William K. Dove, II, Fairfax, VA, for plaintiff.

Philip L. Mandell, Pitler & Mandell, Chicago, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

ANN CLAIRE WILLIAMS, District Judge.

In this diversity case,[1] plaintiff Hartford Fire Insurance Company ("Hartford") brought suit against defendant George Perinovic ("Perinovic") for his alleged failure to honor certain indemnity agreements made with Hartford for any costs it incurred as surety for a travel services company. This matter is before the court on plaintiff's motion for default judgment pursuant to Federal Rule of Civil Procedure 55 as a result of defendant's failure to file responsive pleadings in accordance with Federal Rule of Civil Procedure 12. For the reasons explained below, plaintiff's motion for default judgment is granted.

---

**1.** Plaintiff is a corporation organized under the laws of Delaware, with its principal place of business in Hartford, Connecticut. Defendant is a citizen of the State of Illinois. The amount in controversy exceeds $50,000. *See* 28 U.S.C. § 1332 (Complaint at 1, ¶ 1).

## Background

The pertinent facts are as follows. Hartford filed this complaint on February 5, 1993. Plaintiff first attempted service of process on defendant on February 11, 1993. On that occasion, a special process server left a summons and temporary restraining order at 1714 West Barry in Chicago, with a woman believed to be defendant's daughter. Following that service, plaintiff filed a motion for default judgment on April 2, 1993, alleging that defendant failed to file responsive pleadings within twenty days after service of process as required by Federal Rule of Civil Procedure 12. On May 14, 1993, defendant filed a motion to dismiss under Rule 12(b) and/or a motion to quash service of process, to which plaintiff responded. On that same day, the court ruled that defendant's motion to quash service was granted, defendant's motion to dismiss was denied, and plaintiff's motion for default judgment was moot.

Hartford then hired an investigatory service to determine defendant's actual location and place of residence. As a result, plaintiff learned that defendant owned and resided in a condominium located at 330 West Diversy, Unit 907 in Chicago, Illinois ("Unit 907"). Plaintiff requested the court to issue a Second Alias Summons [2] to be served on defendant or his agent [3] at that location. [4] (Plaintiff's Motion for Default Judgment ("Motion for Default Judgment"), Ex. B ¶ 2). Unit 907 is within a high-security, restricted-access condominium building, with entrance to the lobby controlled by a doorman. During the period from May 14, 1993 to May 22, 1993, at least seven attempts were made to serve the Second Alias Summons at Unit 907. [5] On each of the occasions that the process server tried to gain access to the building to reach Unit 907, he was denied access by the doorman. After repeated attempts, the process server finally served the doorman with the Second Alias Summons and Complaint on May 31, 1993. [6]

2. Plaintiff claims that it requested issuance of a First Alias Summons subsequent to defendant's motion to quash. (Ex Parte Application to Excuse Service ("Application to Excuse") ¶ 4). An investigator, Kevin Truitt ("Truitt"), went to Unit 907 on two different occasions but was unable to serve anyone at Perinovic's residence. Truitt left a copy of the First Alias Summons and Complaint at the residence. (Application to Excuse, Ex. A, Candie Aff.). Although plaintiff indicates that process was served at defendant's residence on this occasion, the record does not include supporting documentation; nor does plaintiff claim that this service was sufficient. Since it is not clear that the First Alias Summons was executed after defendant's motion to quash was granted, the court will not consider service of the First Alias Summons for the purpose of this default judgment.

3. The record indicates that Perinovic was out of the country during this time period, and that Jack Gulish ("Gulish") was housesitting and taking care of business for Perinovic. (Application to Excuse, Ex. A, Candie Aff. ¶ 9).

4. Service of the Second Alias Summons and Complaint was also performed at what was believed to be a business address for Perinovic, Investor's Realty, 4730 West Oakton in Skokie, Illinois on May 20, 1993. (Report on Special Process Service by Server, served May 20, 1993 by Michael Bartlett).

5. On May 14, 1993, a special process server attempted to serve either Perinovic or Gulish but the doorman advised the server that no one was home. The doorman did confirm that Perinovic owned and resided at Unit 907 and he also stated that he had authority to accept and sign for letters and packages for either Perinovic or Gulish. On May 15, 1993, the server attempted service again but was denied access to the lobby of the building. On this occasion, the doorman called Gulish and allowed the server to speak to Gulish on the security phone. Gulish indicated that he knew that the server had a summons and complaint for Perinovic and hung up on the server. On May 16, 1993, the server waited at the building for over five hours in an attempt to serve Gulish as he exited the building. This attempt was also unsuccessful. On May 17, 1993, the doorman threatened to call the police if the server did not leave the premises. On May 18, 20, and 22, 1993, the server was again unsuccessful at gaining access to Unit 907 or to Gulish. On May 22, 1993, the doorman again invited the server to leave the documents with him and reiterated that he had authority to sign for all deliveries for both Perinovic or Gulish. (Application to Excuse at 3–4, ¶¶ 14–23).

6. Upon service, the doorman, Rhys Jeffries ("Jeffries"), read and signed a receipt for the summons and complaint. This receipt verified that as doorman, Jeffries is not permitted to give any person access to the lobby without a resident's prior permission. Also as doorman, he is authorized to receive and sign for all mail, packages, and deliveries for all condominium owners, and specifically, for Unit 907. Jeffries verified that Perinovic is the owner and resident of Unit 907 and that Gulish is housesitting for Perinovic.

On June 1, 1993, Hartford filed an Ex Parte Application to Excuse Service Authorized Under Rule 4 of the Federal Rules of Civil Procedure and Rule 104 of Illinois Supreme Court Rules. This motion only asked the court to excuse service—plaintiff did not argue, nor did the court consider, whether service of process on the doorman was sufficient under Federal Rule of Civil Procedure 4 ("Rule 4"). On June 16, 1993, the court denied plaintiff's Application to Excuse Service, but based upon plaintiff's showing of good cause, extended the time to serve process on defendant until July 5, 1993. In spite of this additional time, plaintiff did not attempt service after serving the doorman on May 31, 1993. However, on July 9, 1993, plaintiff filed this motion for default judgment on the grounds that defendant was properly served on or before May 31, 1993.

### Discussion

■ Determination of this motion for default judgment hinges on whether process was properly served on Perinovic. Therefore, the court must first determine whether plaintiff accomplished proper service on defendant according to Rule 4.[7]

### Service of Process

Rule 4(d)(1) states that service shall be made

[u]pon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. 4(d)(1). For the following reasons, the court concludes that plaintiff's service of process on the doorman at defendant's residence is sufficient under Rule 4(d)(1).[8]

■ In the instant case, Unit 907 is properly considered Perinovic's "dwelling house or usual place of abode." For instance, plaintiff's investigatory service determined that during the time service was being attempted, Perinovic was having his mail forwarded to Unit 907,[9] and that he was being billed for utility and telephone services for that location. (Application to Excuse, Ex. A, Candie Aff. ¶¶ 4–5). The investigation also revealed that Perinovic owned property in Cook County, Illinois. (Application to Excuse, Ex. A, Candie Aff. ¶ 6). Rhys Jeffries, the doorman, subsequently verified that Perinovic owns and resides at Unit 907. (Receipt of Summons and Complaint, Rhys Jeffries,

Finally, Jeffries confirmed that he was authorized to sign for the summons and complaint that had been served upon him. (Receipt for Summons and Complaint, Rhys Jeffries, Doorman).

7. Rule 4(c)(2)(C)(i) states that a summons and complaint may be served upon defendant "pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of that State...." However, the Supreme Court has held that in a civil action brought in federal court under diversity jurisdiction, service of process shall be made according to Federal Rule of Civil Procedure 4(d)(1) rather than state law. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Patel v. Gayes*, 984 F.2d 214 (7th Cir.1993); *Schmitz v. Campbell–Mithun, Inc.*, 124 F.R.D. 189 (N.D.Ill.1989).

8. Since defendant's motion to quash was granted on May 17, 1993, the court considered only

plaintiff's attempts at service of process made after that date. However, the court did not consider the service at Investor's Realty, which occurred on May 20, 1993, because plaintiff did not argue that it served "an agent authorized by appointment or by law to receive service of process" under Rule 4(d)(1). Therefore, the court has evaluated only the sufficiency of the service on Jeffries at defendant's condominium building on May 31, 1993.

9. An investigator spoke to a U.S. postal employee responsible for mail forwarding who stated that Perinovic's mail was being forwarded to a private mail box service in Miami, Florida. Upon speaking to an employee of that service, the investigator learned that once the service received Perinovic's mail, it was then forwarded to 330 West Diversy, Unit 907 in Chicago, Illinois. (Application to Excuse at Ex. A, Candie Aff. ¶¶ 3–5).

Doorman). Gulish also confirmed that Perinovic lived at that location. (Application to Excuse, Ex. A, Candie Aff. ¶ 9).

Moreover, in *National Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256, 258 (2d Cir.1991), the court held that the defendant's New York apartment was his "dwelling house or usual place of abode" even though the housekeeper testified that the defendant had only been at that residence for 34 days during that calendar year. In reaching that conclusion, the court explained that in this age of international travelers, the definition of "dwelling house or usual place of abode" is not as clear as it was when the Federal Rules of Civil Procedure were written. *Id.* at 254. Therefore, this court's conclusion that Unit 907 is Perinovic's "dwelling house or usual place of abode" is consistent with Rule 4(d)(1) and with the Second Circuit's rationale in *National Dev.*

■ Also, Jeffries, who is described as being 32–35 years old, stated on at least two occasions prior to being served, that he was authorized to accept and sign for all packages, letters and deliveries for the tenants of the building. (Application to Excuse at 3–4). On May 31, 1993, in response to the process server's direct question, Jeffries also affirmatively stated that he was authorized to receive legal documents for Perinovic. (Bartlett Aff. at 2–3). Jeffries also acknowledged that responsibility when he signed the Receipt for Summons and Complaint on May 31, 1993. Based on these facts, Jeffries is clearly "a person of suitable age and discretion" under Rule 4.

■ In addition, this court concludes that Jeffries was "residing therein" within the meaning of Rule 4(d)(1) because cases arising under similar facts have liberally interpreted this requirement. For example, in *Three*

*Crown Ltd. Partnership v. Caxton Corp.*, 817 F.Supp. 1033, 1051 (S.D.N.Y.1993), the court held that service upon the twenty year old doorman was sufficient to satisfy the requirements of Rule 4(d)(1) without expressly discussing whether the doorman resided in the defendant's "dwelling house." Also, in *Nowell v. Nowell*, 384 F.2d 951 (5th Cir.1967), a much earlier case, the Fifth Circuit reasoned that service on an apartment manager was sufficient to acquire jurisdiction over the defendant. In *Nowell*, the court expressly rejected the idea that the "residing therein" language should be narrowly construed such that the adequacy of service "turns upon whether the apartment manager resides in the same or different building as the defendant." *Id.* at 953. Moreover, in *Smith v. Kincaid*, 249 F.2d 243 (6th Cir.1957), another early case, the court held that service on the defendant's landlady was sufficient without a showing that the landlady delivered the summons and complaint to the defendant. *See also Braun v. St. Vincent's Hosp.*, 57 N.Y.2d 909, 456 N.Y.S.2d 763, 442 N.E.2d 1274 (1982) (service on doorman came within the contemplation of the New York rules of service); *F.I. duPont, Glore Forgan & Co. v. Chen*, 41 N.Y.2d 794, 396 N.Y.S.2d 343, 364 N.E.2d 1115 (1977) (service on the doorman proper under New York rules of service when doorman refused process server access to the defendant's apartment and when it is doorman's job to take deliveries of all types for residents).[10] Since Hartford left a copy of the summons and complaint at defendant's "usual place of abode with some person of suitable age and discretion then residing therein," Perinovic received valid service under Rule 4(d)(1).[11]

### Default Judgment

Federal Rule of Civil Procedure 55 states that "[w]hen a party against whom a judg-

10. Some courts have also broadly interpreted Rule 4(d)(1) when, as is the case here, the defendant has received actual notice of the suit. *See e.g., National Dev. Co. v. Triad Holding Corp.*, 131 F.R.D. 408, 412 (S.D.N.Y.1990) *aff'd*, 930 F.2d 253 (2d Cir.1991) (citing *Nowell v. Nowell*, 384 F.2d 951, 953 (5th Cir.1967)). While it is clear that notice to the defendant of the lawsuit is not itself sufficient, some courts would construe Rule 4 liberally if there is actual notice and substantial compliance with the Rule. *See id.* at 412–13. *See generally* 4A Charles A. Wright & Arthur R.

Miller, Federal Practice and Procedure § 1096, at 78–80 (1987) (noting that it makes little sense to construe 4(d)(1) technically when actual notice has been received).

11. Therefore, the court need not address Hartford's alternative argument that service on Jeffries was proper because he was "an agent authorized by appointment or by law" under Rule 4(d)(1).

ment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Rule 12 explains that a "defendant shall serve an answer within 20 days after the service of the summons and complaint upon that defendant...." Fed.R.Civ.P. 12(a). Consequently, the court finds that defendant is in default because he failed to file responsive pleadings during the more than 20 days that have elapsed since May 31, 1993, the date of service on defendant's doorman.[12]

### Conclusion

For the foregoing reasons, plaintiff's motion for default judgment is granted. Prove-up by affidavit is set for December 10, 1993, at 9:30 a.m.

---

**12.** The Sixth Circuit held that a motion for default judgment was properly granted under very similar circumstances. In *Smith v. Kincaid,* 249 F.2d 243 (6th Cir.1957), the appellate court affirmed the district court's entry of default judgment against the defendant when the landlady had been served at the defendant's residence. Significantly, *Smith* relied on a Seventh Circuit case, *Jones v. Jones,* 217 F.2d 239 (7th Cir.1954), in which a default judgment was held to be proper where the defendant's daughter was served and the defendant failed to provide sufficient evidence of lack of service or notice of the action.