**JoAnn CHURCHILL, Plaintiff,**

**v.**

**Robert BARACH, an individual and Does 1–5, inclusive, Defendants.**

**No. CV–S–94–214–PMP(RLH).**

United States District Court, D. Nevada.

Oct. 4, 1994.

David B. Churchill, Poway, CA, George R. Lyles, Lyles, Austin & Burnett, Las Vegas, NV, for plaintiff.

Robert Mison, Robert V. Kuenzel, John H. Feldmann, Proskauer Rose Goetz & Mendelsohn, San Francisco, CA, Cam Ferenbach, Gordon Warren, Lionel, Sawyer & Collins, Las Vegas, NV, for defendants.

## ORDER

PRO, District Judge.

Before the Court is an Amended Motion to Dismiss for Insufficiency of Service of Process, Untimely Service, Lack of Personal Jurisdiction, and Failure to State a Claim (# 15) filed by Defendant Robert Barach on August 8, 1994. Plaintiff JoAnn Churchill filed an Opposition (# 17) on August 25, 1994. Defendant filed his Reply (# 19) on September 9, 1994.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The pertinent facts and procedural history are as follows. JoAnn Churchill ("Churchill"), a former ticket agent for Continental Airlines, Inc. ("Continental"), originally filed suit against Robert Barach ("Barach"), a Continental customer and New York resident, in *Churchill v. Barach*, No. CV–S–93–348–LDG (RJJ) (*"Churchill I"*), for libel, intentional infliction of emotional distress, and tortious interference with a contractual relationship. In that Complaint, Churchill sought to recover for personal injuries which she alleges were sustained as a result of a letter Barach wrote to Continental complaining about Churchill's inappropriate behavior

towards him during incident that occurred at McCarran International Airport in Las Vegas, Nevada.

In *Churchill I*, Plaintiff filed a Request to Enter Default and an Application for Default Judgment on the grounds Barach had failed to appear or otherwise respond to the Complaint after having been properly served. In an Order entered on August 24, 1993, the Honorable Lloyd D. George denied the aforementioned Requests for Default because the Court was uncertain whether Barach had been properly served. *See Churchill I* Order dated August 24, 1993, at 1.[1] Furthermore, concerned that the 120–day period within which Churchill could effect service was about to expire, the Court granted Churchill an additional 20 days from the date of the Order to reserve Defendant. *See id.* at 3–4. Thereafter, because Churchill failed to properly serve Barach within the Court-imposed 20–day limit, the Court dismissed the Complaint without prejudice. *See Churchill I* Order dated February 2, 1994.

On March 7, 1994, Churchill refiled her Complaint against Barach alleging the same causes of action contained in her first Complaint. Churchill again attempted to serve Barach on July 1, 1994. At that time, a deputy sheriff or marshall left a Summons and Complaint with the doorman at Barach's apartment building located at 349 East 49th Street, New York, New York. Churchill also mailed a copy of the Summons and Complaint to Barach at his New York address, and filed an Affidavit of Service (# 7) with this Court on July 20, 1994. Barach has acknowledged that he received the copies left with the doorman and the copies sent by mail. *See* Declaration of Robert Barach, attached as Ex. "E" to Defendant's Motion to Dismiss (# 15).

Defendant Barach now moves to dismiss the entire action on the grounds that Churchill failed to properly serve process on him in accordance with the requirements of Rule 4 of the Federal Rules of Civil Procedure. Alternatively, Barach seeks dismissal of Churchill's claims for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6).

## II. DISCUSSION

### A. Motion to Dismiss for Insufficient Service of Process

Rule 4 of the Federal Rules of Civil Procedure governs service of process in federal court. Rule 4(e) provides for service upon individuals within a judicial district of the United States and authorizes nationwide long-arm jurisdiction over defendants.[2] Subsections (1) and (2) of Rule 4(e) set forth that service may properly be effected (1) by a method approved by the law of the state in which the federal court sits, in this case, Nevada, Fed.R.Civ.P. 4(e)(1); (2) by a method approved by the law of the state in which service is effected, in this case, New York, Fed.R.Civ.P. 4(e)(1); (3) by delivering a copy of the summons and of the complaint to the individual personally, Fed.R.Civ.P. 4(e)(2); (4) by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, *id.*; or (5) by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process. *Id.* Barach contends that Churchill has

---

1. The Court was concerned because "the proof of mailing (green card) [did] not reflect the date of receipt and the signature on the addressee signature line [was] not that of the Defendant." *See Churchill I* Order dated August 24, 1993, at 1. Barach represents that the receipt was signed by a doorman at the apartment building where Barach resides.

2. Rule 4 was amended on April 22, 1993, and given effect on December 1, 1993. As amended, Rule 4(e) provides that service may be effected in any judicial district in the United States as follows:

(1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or

(2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

failed to comply with any of the approved methods of service under Rule 4 and, therefore, this case must be dismissed because the 120–day period provided by Fed.R.Civ.P. 4(m) has expired.

From the record in this case, and the Affidavit of Service (# 7) filed by Churchill on July 20, 1994, the Court concludes that Churchill attempted to effect service pursuant to a method approved by New York law, specifically N.Y.Civ.Prac.L. & R. ("NYCPLR") § 308(2). According to NYCPLR § 308(2) personal service may be effected by:

> (1) delivering the summons within the state to a person of suitable age and discretion at the dwelling place of the person to be served; and (2) by mailing the summons to the person to be served at his last known residence in an envelop bearing the legend "personal and confidential" and not indicating on the outside thereof that the communication is from an attorney or concerns an action against the person to be served; and (3) such delivery and mailing must be effected within twenty days of each other; and (4) proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later. Service shall be complete ten days after such filing.

*Three Crown Limited Partnership v. Caxton Corp.*, 817 F.Supp. 1033, 1050 (S.D.N.Y.1993).

The Court finds that Churchill's efforts to effect service pursuant to § 308(2) were untimely under Fed.R.Civ.P. 4(m). Even assuming for the moment that Churchill complied with all the elements of service required by § 308(2), it is clear from the record that service was not complete until after the 120–day limit had expired. Churchill filed her Complaint on March 7, 1994. Counting forward 120 days reveals that Churchill was required to effectively complete service by July 5, 1994, to be in compliance with Rule 4(m). Churchill, however, did not file a proof of service with this Court until July 20, 1994, fifteen days after expiration of the period. Furthermore, according to § 308(2), service was not "complete" until ten days thereafter on July 30, 1994. The result is that Churchill did not properly effect service under New York law until 25 days after the 120–day period provided for by Rule 4(m) had expired.

In her Opposition however, Churchill does not argue that she properly effected service under New York law. Instead, she argues that Barach was properly served under Rule 4(e)(2), and that said service was effected in a timely manner. Barach responds by arguing that Churchill failed to properly serve him under Rule 4(e)(2) and, in any event, because Churchill attempted to serve him pursuant to New York law and failed, she cannot now assert that this same service is also valid under Rule 4(e)(2). *See Mason v. Genisco Technology Corp.*, 960 F.2d 849 (9th Cir.1992).

Churchill relies upon the subsection of Rule 4(e)(2) which provides that service may be effected "by leaving copies [of the summons and of the complaint] at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." Barach responds that service upon the doorman of his apartment building was invalid because the doorman was not "residing" at Barach's "dwelling house or usual place of abode."

It is undisputed that Barach resides within one of the apartments in the apartment building located at 349 East 49th Street. Thus, that apartment is properly considered Barach's "dwelling house or usual place of abode." Further, the Court finds that the doorman, Mr. Kolja Curanovic, is "person of suitable age and discretion." Accordingly, whether service was properly effected under Rule 4(e) will turn upon this Court's construction of the phrase "residing therein," and whether that phrase, under the facts of this case, encompasses Barach's doorman. For the reasons that follow, the Court finds that it does.

The phrase "residing therein" is not defined by the Federal Rules. The Court finds that Plaintiff is entitled to a liberal construction of Rule 4(e) and the terms contained therein because Barach has had actual notice that a suit has been filed against him. As the Fifth Circuit explained in *Nowell v. No-*

*well,* 384 F.2d 951, 953 (5th Cir.1967), *cert. denied,* 390 U.S. 956, 88 S.Ct. 1053, 19 L.Ed.2d 1150 (1968), during its analysis of former Rule 4(d)(1):[3]

> The appropriate construction of Rule 4(d)(1) varies according to whether the defendant received notice of the suit. 4(d)(1) should be broadly construed where the defendant, as in this case, received notice of the suit. This rule of construction is, of course, subject to the limitation that the construction of the statute's language must be natural rather than an artificial one ... the practicalities of the particular fact situation determines whether service meets the requirements of 4(d)(1).

*See also Hartford Fire Ins. Co. v. Perinovic,* 152 F.R.D. 128, 131 n. 10 (N.D.Ill.1993) (noting that "[s]ome courts have [ ] broadly interpreted Rule 4(d)(1) when ... the defendant has received actual notice of the suit"); *National Dev. Co. v. Triad Holding Corp.,* 131 F.R.D. 408, 412 (S.D.N.Y.1990), *aff'd,* 930 F.2d 253 (2nd Cir.1991) (same); *Frank Keevan & Son v. Callier Steel Pipe & Tube,* 107 F.R.D. 665, 671 (S.D.Fla.1985) (noting that "[c]ourts have liberally construed Rule 4(d)(1) and found valid service of process when a defendant has actual notice of a lawsuit filed against him"). *See generally* 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1096, at 78–80 (1987) (noting that it makes little sense to construe 4(d)(1) technically when actual notice has been received).

In cases arising under similar facts, the courts have been inclined to construe the "residing therein" requirement liberally in order to find valid service of process. *See Hartford Fire,* 152 F.R.D. at 131 (holding that doorman at defendant's condominium building was "residing therein" for purposes of service of process); *Three Crown,* 817 F.Supp. at 1051 (holding, without discussion, that service upon 20–year–old doorman was sufficient to satisfy requirements of Rule 4(d)(1)); *Nowell,* 384 F.2d at 953 (finding service upon apartment manager sufficient); *Smith v. Kincaid,* 249 F.2d 243 (6th Cir.1957) (finding service upon landlady sufficient).

Furthermore, the doorman of Barach's apartment building has acknowledged that his "regular duties include screening callers, announcing visitors, *and accepting messages and packages for delivery to the tenants of the building.*" Declaration of Kolja Curanovic, attached as Ex. "D" to Defendant's Motion to Dismiss (# 15), at 1. It has been recognized that:

> Arguably, since hotel managers and landladies normally are under an obligation to transmit all incoming messages and mail to guests and tenants, there appears to be no valid objection to permitting delivery to such persons, at least in terms of questioning the likelihood of notice or fairness to defendant. This obligation to relay information to guests and occupants should be a sufficient basis for distinguishing those cases in which service has been disallowed when left with a resident of a multiple unit dwelling who is not living in defendant's place of abode.

4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1096, at 82–83 (1987).

The Court finds the aforementioned authority persuasive and thus concludes that under the facts of this case, in leaving copies of the summons and complaint with Barach's doorman, Churchill left them at Barach's "usual place of abode with some person of suitable age and discretion then residing therein." Barach therefore received valid service under Rule 4(e). Furthermore, said service was timely as it occurred on July 1, 1994—four days prior to the expiration of the service period provided for by Rule 4(m).

Having determined that service was valid under Rule 4(e)(2), the Court must now address Barach's argument that service was nonetheless invalid because Churchill unsuccessfully attempted service under New York law, and, as a result, Churchill cannot now argue that his unsuccessful attempt to comply with state law simultaneously satisfied the different federal requirement of Rule 4(e)(2). Barach relies primarily upon *Mason v. Genisco Technology Corp.,* 960 F.2d 849,

---

**3.** Rule 4(e)(2) adopts the language of former Rule 4(d)(1). Therefore, cases construing the

former Rule are helpful in this Court's analysis of new Rule 4(e)(2).

853 (9th Cir.1992), where the Ninth Circuit Court of Appeals, in analyzing an earlier version of the Federal Rules, held that "a failed attempt at service under subsection (ii) of Rule 4(c)(2)(C) is not effective simply because it conforms to state law methodology as permitted by subsection (i)."

In *Mason*, the plaintiff attempted to effect service pursuant to former Rule 4(c)(2)(C)(ii)[4] by mailing copies of the summons and complaint by first class mail, postage prepaid, requesting a return receipt, to the defendant. The plaintiff included a notice and acknowledgment form in the mailing that the defendant never signed nor returned. The Court of Appeals found that service was clearly ineffective under Rule 4(c)(2)(C)(ii) because the defendant never signed nor returned the acknowledgement form. The plaintiff nevertheless contended that the same mailing constituted proper service under Rule 4(c)(2)(C)(i)[5] because California law provides that service is effective if the plaintiff sends the summons and complaint to the defendant by first class mail, postage prepaid, requiring a return receipt. The Court of Appeals, however, disagreed.

In examining the relationship between subsections (i) and (ii) of former Rule 4(c)(2)(C), the Ninth Circuit relied heavily upon the language of the Rule itself and the acknowledgment form. First, the court reasoned that the language of the Rule contemplated that where a defendant does not return the notice of acknowledgment, the plaintiff must make a second attempt at service, 960 F.2d at 852 citing *Combs v. Nick Garin Trucking,* 825 F.2d 437, 443–44 (D.C.Cir.1987), and that the legislative history was consistent with this requirement. *Id.* Second, the court found the that "second attempt" rule was fair

because the language of the acknowledgement form did not indicate that a failure to return the form may result in a default judgment. *Id.* at 853. Finally, the court explained that the "second attempt" rule "avoids 'entangling the courts in ad hoc determinations about whether and to what degree actual notice of a lawsuit was provided,'" and that it "imposes no significant burden on the plaintiff." *Id.* (citations omitted).

Barach contends that because Churchill attempted to serve him under New York methodology and failed, the rule announced in *Mason* precludes Churchill from now asserting the service was valid under Rule 4(e)(2). The Court finds, however, that *Mason* does not require such a result. The Court of Appeals in *Mason* examined the interrelationship between two former provisions of the federal rules—subsections (i) and (ii) of Rule 4(c)(2)(C). Since the 1993 amendments, however, former subsection (ii) has been revised under new Rule 4(d), which sets forth a procedure for a plaintiff to notify the defendant of the commencement of the action and to request a waiver of service. Similarly, former subsection (i) has also been revised as new Rule 4(e)(1), and is now coupled with former rule 4(d)(1), as new Rule 4(e)(2), to form the entirety of new Rule 4(e). The result is that *Mason* did not consider the interrelationship between new Rules 4(e)(1) and (2), and the Court finds that the concerns that mandated the decision in that case are not present in the case at bar.

First, *Mason* considered the interrelationship between two provisions of the former rules that are not at issue in this case. Second, as previously noted, *Mason* relied heavily upon the language of both former Rule 4(c)(2)(C) and the acknowledgment form

---

**4.** Prior to the 1993 amendments, Rule 4(c)(2)(C)(ii) provided that the plaintiff may serve the defendant

by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to form 18–A and a return envelop, postage prepaid, addressed to the sender. If no acknowledgment of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and com-

plaint shall be made ... in the manner prescribed by subdivision (d)(1)....

Fed.R.Civ.P. 4(c)(2)(C)(ii).

**5.** Prior to the 1993 amendments, Rule 4(c)(2)(C)(i) provided that the plaintiff may serve the defendant

pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of that State.

Fed.R.Civ.P. 4(c)(2)(C)(i).

which the court found required a second attempt to secure service after a failed first attempt. That language, however, is not a factor in this case because former Rule 4(c)(2)(C) is now Rule 4(d) which governs waiver, and there is no language in the new Rule 4(e) which would indicate a similar intent. Finally, the *Mason* court focused upon the fact that old Rule 4(c) and the acknowledgment form indicated that sanctions for failing to return the acknowledgment form were limited the costs of reservice, and neither indicated such failure might result in an entry of default or default judgment. The court apparently felt that it would be unfair to allow service under state law, and thus allow for the possibility of a default judgment, when the language of the acknowledgment form might lead a defendant to believe that the only penalty for failing to return the acknowledgment form would be the costs of reservice. Here, similar dangers are not present because there is no acknowledgment form to be returned. Absent such a danger, the Court finds no compelling justification for disallowing service under new Rule 4(e)(2), where the same service has been unsuccessfully attempted under new Rule 4(e)(1).

Accordingly, because the Court finds that Barach received valid service pursuant to Rule 4(e)(2), and because *Mason* does not preclude finding of valid service under Rule 4(e)(2) where the same service was unsuccessfully attempted under Rule 4(e)(1), Barach's Motion to Dismiss for insufficient service of process will be denied.

B. *Motion to Dismiss for Failure to State a Claim*

■ In considering Defendant's Motion to Dismiss pursuant to Rule 12(b)(6), the factual allegations of Churchill's Complaint must be presumed to be true, and this Court must draw all reasonable inferences in Plaintiff's favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). The issue is not whether Churchill will ultimately prevail, but whether she is entitled to offer evidence in support of her claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Consequently, the Court may not grant a Motion to Dismiss for failure

to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The Court does not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the Complaint. *Western Mining Council v. Watts,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

1. First Cause of Action: Libel

■ According to the Complaint (# 1), Churchill's claim for libel arises out of a letter dated March 6, 1992, sent by Barach to Dennis J. Sullivan, Supervisor of Airport Services for Continental Airlines at McCarran Airport, expressing Barach's dissatisfaction with the service he received from Churchill, who at that time was employed as a Continental agent. Churchill asserts as the basis of her libel action that the letter contained various statements that are false and have resulted in the loss of her employment and reputation. Specifically, Churchill alleges the following statements contained in the letter are "false and defamatory":

> One: "Quite frankly, I'm surprised it takes a passenger's insistence to get the issue resolved and that and the JoAnn is permitted to work the ATO."

> Two: "I found her to be rigid, uninformed, incompetent and unhelpful at best."

> Three: "Letting her deal with F passengers is a major mistake."

> Four: "Even when she issued the credit on the original ticket; she failed to take an imprint of my American Express card at first."

> Five: "If you want to maintain your profitable business in the future, Continental should take the actions it deems necessary."

> Six: "Otherwise, the JoAnns at Continental will help put you out of business."

*See* Plaintiff's Complaint (# 1), at 2; *see also* Letter from Robert Barach to Dennis J. Sullivan, dated March 6, 1992, attached as

Exhibit "G" to Defendant's Motion to Dismiss (# 15), at 2.[6]

Barach seeks dismissal of Churchill's libel cause of action on the grounds that five of the six allegedly defamatory statements (One, Two, Three, Five, and Six) are actually non-actionable subjective opinions, and that the remaining statement (Four), while arguably a statement of fact, is not susceptible to any defamatory construction. Alternatively, Barach argues that all of Barach's comments are privileged because they were communicated to a party that held a common interest with Barach.

 Recently, in *PETA v. Bobby Berosini, LTD.*, 110 Nev. 78, 867 P.2d 1121 (1994), the Nevada Supreme Court reiterated that to create liability for defamation there must be:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting to at least negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm, or the existence of special harm caused by the publication.

867 P.2d at 1123 (quoting Restatement (Second) of Torts § 558 (1965)). Under Nevada law, "it is well-established that statements are libelous only if they are presented as fact rather than opinion, and only if the facts asserted are false." *Wellman v. Fox*, 108 Nev. 83, 825 P.2d 208, 210, *cert. denied*, —— U.S. ——, 113 S.Ct. 68, 121 L.Ed.2d 34 (1992). "[S]tatements of opinion ... are not actionable." *Nevada Ind. Broadcasting Corp. v. Allen*, 99 Nev. 404, 664 P.2d 337, 341 (1983). Furthermore, "[w]hether the objectionable statements constitute fact or opinion

is a question of law" for this Court to decide. *Wellman*, 825 P.2d at 210 (citing *Harte–Hanks, Inc. v. Connaughton*, 491 U.S. 657, 688, 109 S.Ct. 2678, 2696, 105 L.Ed.2d 562 (1989).[7]

In light of this precedent, the Court finds that statements One, Two, Three, Five and Six cannot support a claim of libel under Nevada law because they are unverifiable statements of Barach's opinion. Each of these statements falls into a class of opinion which both the Nevada courts have identified and recognized as "evaluative opinions." *See PETA*, 867 P.2d at 1127; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 114, at 814 (5th ed. 1984). "An *evaluative* opinion involves a value judgment based on true information disclosed to or known by the public." 867 P.2d at 1127 (emphasis in original). Moreover, "evaluative opinions convey the publisher's judgment as to the quality of another's behavior and, as such, [they are] not [ ] statement[s] of fact. *Id.* (finding statements that animal trainer regularly abused animals were evaluative comments based on known facts).

Here, Churchill does not allege that any of the facts "disclosed" in the letter, upon which the allegedly defamatory statements were based, are false. Comments One, Two, Three, Five and Six reflect Barach's evaluative judgement as to the quality of service he received from Churchill, and expressed Barach's dissatisfaction with said service. The Court concludes that these statements, when taken in this context, are not reasonably capable of a defamatory construction and therefore do not support a claim for libel under Nevada law.

 The Court further finds that statement Four, which is arguably a statement of

6. Examination of the Barach letter as part of the Motion to Dismiss is proper as it may properly be considered part of the pleadings because it is referred to specifically in the Complaint and is central to Churchill's claims. *See Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir.1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *see also* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327, at 762–63 (2d ed. 1990) ("[W]hen plaintiff fails to

introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.").

7. Although whether a statement is capable of a defamatory construction is a question of law, "[a] jury question arises when the statement is susceptible of different meanings, one of which is defamatory." *Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 851 P.2d 459, 463 (1993) (citing *Branda v. Sanford*, 97 Nev. 643, 637 P.2d 1223, 1225 (1981)).

fact, is not capable of a defamatory construction either. A statement is defamatory when, "[u]nder any reasonable definition[,] such charges would tend to lower the subject in the estimation of the community and to excite derogatory opinions against [her] and to hold [her] up to contempt." *PETA*, 867 P.2d at 1123 n. 2 (quoting *Las Vegas Sun v. Franklin*, 74 Nev. 282, 329 P.2d 867, 869 (1958)). The statement, "even when she issued the credit on the original ticket; she failed to take an imprint of my American Express card at first," even if ultimately proven to be false, is incapable of a defamatory construction because it does not lower Churchill in the estimation of the community nor excite derogatory opinions against her and hold her up to contempt. Accordingly, because the Court finds that none of the statements alleged by Churchill are capable of a defamatory construction, her libel claim must be dismissed.[8]

### 2. Second Cause of Action: Intentional Infliction of Emotional Distress

■ Churchill argues that Barach's conduct in sending the letter was extreme and outrageous, and that the letter, on its face, "show[s] Defendant acted with the intention to cause Plaintiff emotional distress and with reckless disregard for the probability for causing such distress." Plaintiff's Opposition (# 17), at 7. As result, Churchill alleges to have suffered severe emotional distress "in the form of fear, nervousness, anxiety, worry, stress, and indignity." Plaintiff's Complaint (# 1), at 4. Churchill further alleges that she also lost her job and that since then, she "has had great difficulty in eating, sleeping, and suffers outward manifestations of stress and is generally uncomfortable." *Id.* at 5.

Barach argues that as a matter of law the conduct alleged was neither extreme nor outrageous, and that Churchill has failed to allege emotional distress sufficiently severe to sustain an intentional infliction claim.

■ In Nevada, an intentional infliction of emotional distress claim may be maintained where:

1) the defendants' conduct was extreme and outrageous; 2) defendants' conduct was non-privileged; 3) defendants acted with the intention to cause plaintiffs emotional distress, or with reckless disregard for the probability for causing such distress; 4) plaintiffs actually suffered severe or extreme emotional distress; and 5) defendants' conduct actually or proximately caused the emotional distress.

*Alam v. Reno Hilton Corp.*, 819 F.Supp. 905, 911 (D.Nev.1993) (citing *Nelson v. City of Las Vegas*, 99 Nev. 548, 665 P.2d 1141, 1145 (1983)).

■ In the case at bar, the only "conduct" Churchill alleges was extreme and outrageous was the sending of the letter. The Court finds that this conduct, standing alone, is insufficient as a matter of law to sustain Churchill's intentional infliction claim. Liability will only be found in intentional infliction cases where the actions of defendant go beyond all possible bounds of decency, is atrocious and utterly intolerable. *Alam*, 819 F.Supp. at 911 (citing Restatement (Second) of Torts § 46 cmt. d (1965)). In sending the letter, Barach was expressing his dissatisfaction with the level of service he received from a Continental employee, and indicating the reasons for his decision to stop patronizing Continental. This conduct is the type which occurs thousands of times each day as disgruntled customers and patrons inform employers of their displeasure with the services or products they pay for. This conduct can hardly be classified as extreme or outrageous. Given that, the Court must conclude that Churchill has failed to allege facts which would indicate that Barach's conduct was extreme and outrageous thereby supporting an intentional infliction claim.

■ The Court further notes that Churchill has failed to allege damages sufficient to support an intentional infliction

---

8. Furthermore, this conclusion is consistent with the constitutional privilege provided by the Nevada Constitution which provides that "[e]very citizen may freely, speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right." Nev. Const. art. I, § 9; *see PETA*, 867 P.2d at 1127 (finding that constitutional privilege provided by Nevada Constitution protected defendants from defamation liability).

claim. It is not just "emotional distress" that is required, but "severe emotional distress." Put another way, "the stress must be so severe and of such intensity that no reasonable person could be expected to endure it." *Alam,* 819 F.Supp. at 911. Here, Churchill's allegations simply fail to indicate that Churchill suffered a level of distress sufficient to maintain an intentional infliction claim. Where, as in this case, the outrage is less extreme, "the more appropriate it is to require evidence of physical injury or illness from the emotional distress." *Chowdhry,* 851 P.2d at 462; *Alam,* 819 F.Supp. at 911. This is the so-called "physical impact" requirement. Churchill alleges that she has had "great difficulty in eating, sleeping, and suffers outward manifestations of stress and is generally uncomfortable." This level of physical or emotional distress, however, is insufficient as a matter of law to satisfy the physical impact requirement. *Chowdhry,* 851 P.2d at 462 ("Insomnia and general physical or emotional discomfort are insufficient to satisfy the physical impact requirement."); *see also Alam,* 819 F.Supp. at 911 (feelings of inferiority, headaches, irritability, and loss of ten pounds is insufficient distress as a matter of law).

Therefore, as the Court finds that Churchill has failed to allege conduct which rises to the level of outrageousness, and because she has further failed to allege a sufficiently severe level of distress, she is unable to maintain her intentional infliction claim and Barach's Motion to Dismiss must be granted.

### 3. Third Cause of Action: Tortious Interference With Contractual Relations

Plaintiff contends that as a result of Barach's letter her employment relationship with Continental has been severed. Thus, she contends that Barach's actions constituted tortious interference with her contractual relationship and her prospective advantage of continued employment.

In Nevada, the elements of a cause of action for tortious interference are "1) a valid and existing contract; 2) the defendant's knowledge of the contract; 3) intentional acts designed to disrupt the contractual relationship; 4) actual disruption of the contractual relationship; and 5) resulting damages." *Alam* 819 F.Supp. at 911 (citing *Sutherland v. Gross,* 105 Nev. 192, 772 P.2d 1287 (1989)).

Barach argues that this claim should be dismissed because it fails on the last two elements, and that Churchill has not alleged that Barach's act was the proximate cause of her termination. Barach's argument is based upon the pleadings in another case before this Court, *Churchill v. Continental Airlines, Inc.,* (CV-S-93-724-PMP (LRL)), where Churchill alleges that she was terminated from her employment with Continental because of her age in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. 621 et seq. Barach argues that because Churchill's theory of liability in her action against Continental is that Continental terminated her because of her age, Barach's letter could not have proximately caused the termination of her employment in any sense.

In response to Barach's argument, Churchill confirms that her claim in the case at bar is that "Mr. Barach's letter was utilized by Continental as part of their calculated scheme to acquire evidence and data to terminate Plaintiff as a pretext for unlawful discrimination on the basis of her age." Plaintiff's Opposition (# 17), at 8. Thus, it is clear that Churchill's theory of causation is that Continental terminated her because of her age, and that as part of their scheme they used letters such as Mr. Barach's to justify their allegedly unlawful activities. Under such a theory it is apparent that Churchill cannot maintain her tortious interference claim against Barach. It is fundamental in the law of torts "that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 41, at 263 (5th ed. 1984). Here, Churchill's allegations reveal that it was the actions of Continental rather than Barach which actually caused her termination. Churchill, therefore, does not allege facts which indicate that Barach's actions were either the actual or proximate cause of her damage. Consequently, Barach's Motion

to Dismiss must be granted on this claim as well.

IT IS THEREFORE ORDERED THAT Defendant's Motion to Dismiss (# 15) is Granted.