**Michael T. EDES, Plaintiff**

v.

**Jason H. FREDSON, Defendant**

**No. CIV.04–172–P–H.**

United States District Court, D. Maine.

Oct. 28, 2004.

Steven E.B. Lechner, Troubh, Heisler & Piampiano, P.A., Portland, ME, for Michael T. Edes, Plaintiff.

Mark E. Dunlap, Norman, Hanson & DeTroy, Portland, ME, for Jason H. Fredson, Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT OR IN THE ALTERNATIVE TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS

HORNBY, District Judge.

This is an automobile accident case. The plaintiff is a Maine resident, and the accident happened in Maine on May 18, 2000. The plaintiff filed the case in federal court on July 28, 2004, based upon diversity of citizenship. The defendant was traveling through Maine at the time of the accident. He now lives in a 200–unit apartment building in New York City.

When the plaintiff tried to serve process on the defendant in New York City on August 24, 2004,[1] the apartment doorman would not let the process server go beyond the lobby. The process server left the papers with the doorman, who promised to deliver them to the defendant. On August 26, 2004, the process server mailed a copy of the papers to the defendant at the address the doorman gave (a different apartment number than the plaintiff originally believed to be the residence).

The plaintiff filed a return of service in this court on September 2, 2004. When the defendant filed no answer or appearance, the plaintiff requested entry of default on September 16, 2004. On September 16, 2004, the plaintiff also mailed the defendant two copies of the request for default, one by regular first class mail and the other by certified mail. The Clerk entered default on September 16, 2004.

The defendant has now moved to have the default lifted or, alternatively, to have the case dismissed for insufficient service of process. Both parties have filed affidavits and exhibits. The defendant swears that he was completely unaware of the lawsuit until he received the certified mail request for default on September 18, 2004, and that he notified his insurer on the next

---

1. There is confusion over this date because the return of service the plaintiff filed with the court was executed on August 26, 2004, and did not state a service date. The Clerk accordingly docketed the service as having been effected on August 26, 2004. In the application for entry of default, the plaintiff also referred to the date of service as August 26, 2004. Now the plaintiff has filed a return that shows that the process server left the papers at the apartment building on August 24, 2004.

business day. Although the plaintiff is apparently not in a position to contradict that assertion, the plaintiff furnishes evidence of service on the doorman, the first and second mailings.

### MOTION TO DISMISS

■ There are no grounds for dismissing the lawsuit. Even if the service is inadequate, more time remains under the Federal Rules of Civil Procedure to accomplish proper service. The motion to dismiss is DENIED.

### SERVICE OF PROCESS

The plaintiff relies upon Fed.R.Civ.P. 4(e)(1). Under that rule, the plaintiff can accomplish service of process in a case like this by following the procedures of the forum state (Maine) or those of the state where service is taking place (New York).

■ *Maine.* I conclude that service was inadequate under Maine procedures. The plaintiff relies upon Me. R. Civ. P. 4(d)(1).[2] It states that service may be made upon an individual "by leaving copies [of the complaint and summons] at the individual's dwelling house or usual place of abode with some person of suitable age and discretion *then residing therein.*" Me. R. Civ. P. 4(d)(1) (emphasis added). There is no suggestion that the doorman is or was a resident of the apartment building where the defendant lives. The service therefore fails to satisfy the plain language of the Rule. I recognize that in interpreting the identical language of Fed.R.Civ.P. 4(e)(2), at least one court has treated a doorman as "residing" in the apartment building where he works when the doorman delivered the papers and the defendant had actual notice of the lawsuit. *See Churchill*

*v. Barach,* 863 F.Supp. 1266 (D.Nev.1994). I have no reason to believe that Maine's Law Court would ignore the plain language of the Maine rule and follow that interpretation. Instead, an authoritative Maine treatise states:

> The person with whom the papers are left must be *both* of suitable age and discretion. He must also reside in the defendant's "dwelling house or usual place of abode." A domestic servant or employee of the defendant, who spent only his working hours at the defendant's premises, would not qualify.

Richard H. Field, et al., *Maine Civil Practice* § 4.5 (1970).

■ *New York.* I conclude that service was adequate under New York procedures. New York does not require that the papers be left with a person living in the building. Instead, it provides that service may be made by delivering the summons "to a person of suitable age and discretion at the ... dwelling place or usual abode of the person to be served" and mailing it to the defendant's last known residence in an envelope meeting specified conditions. N.Y. C.P.L.R. § 308(2). The delivery and mailing must occur within twenty days of each other, and proof of service must be filed within twenty days of the later event. *Id.* The defendant says that "Plaintiff did not conform with the second prong of the service requirement of New York; that is that Defendant was not appropriately served by mail and the appropriate filings were not made in court." Def.'s Mem. at 3. The defendant does not elaborate upon these asserted inadequacies. Apparently he is referring to his contention that he never received the mailing from the process server. The New York statute, however, does not require that the mailing be

---

**2.** Me. R. Civ. P. 4(e) provides that "[a] person who is subject to the jurisdiction of the courts of the state may be served with the summons

and complaint outside the state, in the same manner as if such service were made within the state."

received, only that it occur.[3] In the absence of any articulation of other defects in the mailing or the filing (the return of service was filed September 2, 2004, well within the twenty days), I find that the plaintiff has satisfied all the New York standards for service of process.

This conclusion furnishes an additional basis for denying the motion to dismiss.

### REMOVAL OF DEFAULT

■■ The parties have argued the motion to remove default as if the propriety of service of process determines the outcome. Their premise is incorrect. Fed. R.Civ.P. 55(c) provides: "For good cause shown the court may set aside an entry of default." Although the First Circuit has announced that there is no " 'precise formula,' " and that " 'each case must necessarily turn on its own unique circumstances,' " it has set forth a variety of factors that a trial court should consider in determining whether good cause has been shown:

> (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; (7) the timing of the motion [to set aside entry of default].

*KPS & Assocs. v. Designs by FMC, Inc.*, 318 F.3d 1, 12 (1st Cir.2003) (alteration in original); *see also United States v. Ponte*, 246 F.Supp.2d 74, 80–81 (D.Me.2003). I therefore consider each of those factors.

*(1) Whether the default was willful.* There is no evidence that the default here was willful.

*(2) Whether setting it aside would prejudice the adversary.* There is no evidence that setting aside the default would prejudice the plaintiff.

*(3) Whether a meritorious defense is presented.* The defendant has said nothing about the merits of his defense. The plaintiff has said little, except to assert in a footnote that there is no defense to liability because this is an accident where the defendant's automobile struck the plaintiff's police cruiser while the latter was parked in an interstate highway breakdown lane. Pl.'s Opp'n at 3 n. 4.

*(4) The nature of the defendant's explanation for the default.* The defendant asserts that the doorman who accepted the papers was new to the apartment building. He also asserts that the first notice he received was the September 16, 2004, certified mail notice of the default request. He says that he did not receive the August 26, 2004, mailing from the process server. He suggests that the reason he received the later mailed notice is that it was sent certified mail, thereby ensuring that someone took care that it reached the correct apartment. The explanation is at least plausible.

*(5) The good faith of the parties.* I have no basis to challenge the good faith of either party.

*(6) The amount of money involved.* Other than the jurisdictional requirement (over $75,000), no specific amount is stated in the complaint. The complaint does claim serious permanent injuries to the state trooper, and I conclude that a significant amount is at stake.

*(7) The timing of the motion to set aside entry of default.* The defendant was prompt in moving to set aside the default once learning of the request for

---

3. The fact that the statute permits mailing to the last known address intimates that the legislature expected that sometimes the mailing would not be received.

default. He filed his motion September 30, 2004.

The First Circuit has been careful to emphasize that removal of default is discretionary and that none of the factors is determinative. According to the First Circuit, flexibility is important:

> This flexibility is necessitated by the competing policies and values that underlie the concept of default. On the one hand, it "provide[s] a useful remedy when a litigant is confronted by an obstructionist adversary," and "play[s] a constructive role in maintaining the orderly and efficient administration of justice." It furnishes an invaluable incentive for parties to comply with court orders and rules of procedure. It encourages the expeditious resolution of litigation and promotes finality. On the other hand, countervailing considerations include the goals of "resol[ving] cases on the merits," and avoiding "harsh or unfair result[s]."

*KPS Assocs.*, 318 F.3d at 12–13 (alteration in original) (citations omitted).

I conclude that in this case I should order the entry of default removed. There is no willfulness, no prejudice to the plaintiff and no evidence of obstructionism; the motion was prompt; there is no challenge to good faith; a large of amount of money is involved; and the explanation for the default is not implausible. Moreover, there has been little delay in the lawsuit, which was filed only recently (August 5, 2004). My major concern is with the defendant's failure to put forth or even to suggest a meritorious defense. There is no reason to remove default in a case where there is no meritorious defense. *See* 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2697 (1998). In another case, that failure might well suffice to deny removal of the default. But given that Maine is a comparative negligence state, liability does not exist in a vacuum. It is exceedingly likely that any hearing on damages (a necessary event even if default establishes liability, *see* Fed.R.Civ.P. 55(b)(2)) will have to compare the conduct of the plaintiff against the conduct of the defendant. I conclude, therefore, that this is a case where the default should be lifted notwithstanding the defendant's failure to put forth a meritorious defense. The motion to remove entry of default is GRANTED.

So ORDERED.